# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MILAN KNOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 07759 |
| | ) | |
| OFFICER LUKE, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Milan Knox filed a *pro se* complaint against Officer Luke of the Village of Sauk police department pursuant to 42 U.S.C. § 1983, alleging that the officer used excessive force against him during four encounters in May and June of 2011. Officer Luke moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (b)(6). This Court granted the motion and dismissed the case without prejudice. *See* Dkt. ## 31-32. Thereafter, Knox filed a fourth Amended Complaint.

Plaintiff's most recent complaint again contains factual allegations, which this Court accepts as true, regarding four incidents in May and June 2011, when Knox claims that Officer Luke used or threatened unreasonable force against him. Specifically, Knox alleges that on May 18, 2011, Luke "attempted, using his police car, to run over Plaintiff"; that on May 5, 2011, Luke "while in his police car, held his hand out of the window towards Plaintiff as if Defendant were holding a gun and said 'Bam, Bam!'"; that on May 20, 2011, at a Walgreens store, "Defendant, without provocation, began unholstering his gun while staring at Plaintiff"; and that on June 4, 2011, "Plaintiff encountered Defendant and Defendant "threatened to 'run [Plaintiff's] ass over.'"

These 2011 incidents followed two prior interactions between Knox and Officer Luke in 2009 and 2010: one in which Luke used his Taser on Knox, allegedly unreasonably, and one in which Luke "was involved in an unjustified search of Plaintiff's home." This complaint also contains a new allegation that Luke violated Plaintiff's civil rights by "irrationally and maliciously apply[ing] law enforcement powers" and "intentionally treat[ing] Plaintiff differently from others similarly situated with no legitimate purpose." Plaintiff cites *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) as support, thus invoking the class-of-one theory of equal protection.

To state a claim for relief, a complaint must contain factual allegations that plausibly suggest an entitlement to relief, to a degree that rises above the speculative level and permits the inference that the defendant is liable. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-680 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007); *Mann v. Vogel,* 707 F.3d 872, 877 (7th Cir. 2013). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of Knox. *See Mann*, 707 F.3d at 877.

As an initial matter, the defendant directs his Rule 12(b)(6) motion at two claims that are not obviously alleged in the complaint. Luke argues that any claim involving the 2009 Taser incident is untimely and barred by *res judicata*, as it was the subject of a prior lawsuit. Luke also argues that any claim arising from the 2010 search is barred by the statute of limitations. Having viewed Knox's prior complaints, which clearly focused on the 2011 incidents, the Court believed the 2009 and 2010 occurrences to have been included in the Fourth Amended Complaint only by way of adding context or background to the current claims, not as the basis of additional claims. Knox confirms this in his response to the motion to dismiss, stating that he mentioned the 2009 and 2010 incidents "only to show the history between the parties that led up to the 2011

incidents." *See* Dkt. # 44. Therefore, the Court does not address the defendant's motion as it relates to the earlier encounters and confines its analysis to the 2011 incidents that have been the subject of this litigation to date.

Regarding the Fourth Amendment claim, Knox has failed to remedy the defects that the Court discussed in its last opinion dismissing Knox's prior complaint. To state a claim based on the four 2011 incidents, Knox would have plead sufficient facts to permit the inference that he was unreasonably seized within the meaning of Fourth Amendment. As the Court explained, the three "stalking" incidents Knox alleged—that is, every 2011 incident except for the alleged run-down in the police car—did not appear to involve an "intentional acquisition of physical control," or any submission by plaintiff to the alleged show of authority. *See Brower v. County of Inyo*, 489 U.S. 593, 596 (1989); *Christensen v. County of Boone*, 483 F.3d 454, 460 (7th Cir. 2007). Therefore they are not actionable seizures.

As for the May 18, 2011, incident in which Officer Luke "attempted, using his police car, to run over Plaintiff," the plaintiff simply repeats this allegation despite the Court's earlier ruling that Knox did not "plead sufficient facts to take his allegations into the realm of a plausible constitutional violation," although it might have sufficed to plead an assault. Lacking was any suggestion that Knox was in any way restricted in his freedom of movement when Luke "attempted" to hit him with the car. Some restraint, even if brief, or effected by coercion rather than physical force, is required. *See Brooks v. City of Aurora*, 653 F.3d 478, 485 (7th Cir. 2011); *Carlson v. Bukovic*, 621 F.3d 610, 618-619 (7th Cir. 2010). As in his prior complaint, Knox does not give any information that allows the inference that a reasonable person would not have felt free to walk (or run) away from Luke. As the Court noted, "a failed attempt at making physical contact, without any of the other coercive factors at work, and without any restraint on the

plaintiff's movement, is not in itself a 'seizure,'" and without a seizure, even outrageous conduct by a police officer is not unconstitutional. *See Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994). A failed attempt at contact continues to be all that Knox alleges, so he does not plausibly allege a claim that Officer Luke violated the Fourth Amendment by using excessive force or otherwise unreasonably seizing Knox.

Knox also asserts an equal protection claim. Knox states that Luke "intentionally treated Plaintiff differently from others similarly situated with no legitimate purpose." This is the very definition of a class-of-one claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). Of course, Knox's conclusory statement alone does not suffice to state a claim. *See Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) ("unsupported legal conclusion" did not state equal protection claim) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009), and *Bell v. Twombly*, 550 U.S. 544, 556–57 (2007)).

The facts that Knox has included in the complaint, construed generously in keeping with the standards for *pro se* pleadings, do hint at a pattern of harassment by Officer Luke, and the Seventh Circuit has held that a pattern of "deliberate and unjustified official harassment" can form the basis of a class-of-one claim. *Geinosky*, 675 F.3d at 745; *see Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013); *Fenje v. Feld*, 398 F.3d 620, 628 (7th Cir. 2005). Here, Knox lists four instances of unprovoked aggression from Officer Luke that left him "terrified to leave his home" and "fear[ing] for his safety."

Ultimately though, these allegations fall short of stating a plausible class-of-one claim. What distinguishes this case from *Geinosky* and other official-harassment cases is the absence of any official act by Officer Luke. *Geinoksy*, for example, involved the plaintiff's receipt of 24 meritless parking tickets. And in *Hanes v. Zurick*, 578 F.3d 491, 496 (7th Cir. 2009), the Seventh Circuit made clear that "*arrests* motivated by personal animus are unconstitutional." Here, though, there was no arrest, nor was there any search or seizure. The requirement of official action exists outside the police context as well. For example, *Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995), involved the denial of a liquor license renewal owing to the defendants' ill will toward the plaintiff. And *Swanson* involved the mayor using his office to influence the plaintiff's building permits and have him prosecuted for ordinance violations without a legal basis. *See* 719 F.3d at 782, 785 (Plaintiff "has identified his specific harasser, provided a plausible motive and detailed a series of alleged actions by Whitworth that appear illegitimate on their face").

There is no such official action alleged here. Knox alleges four chance encounters with Luke—not law enforcement stops—during which he felt that he was being threatened. He has alleged that Luke was harassing him, but has set forth no allegations that suggest that there was any "official" harassment—in other words, that Luke harassed him in his capacity as a police officer or took any action he was empowered to perform only by virtue of his office. Therefore, Knox fails to plead any facts that allow the inference that he suffered the "irrational or malicious application of law enforcement powers," *Geinosky*, 675 F.3d at 747, or any kind of official action, during his four 2011 encounters with Luke. He therefore fails to state a claim for relief on equal protection grounds as well.

That Knox has not alleged any constitutional violation, however, is not to say that he had no claim at all; he just has no *federal* claim. Acts of the sort he alleges may well constitute violations of state law or provide the basis for administrative remedies. Knox would be well advised to consider the availability of other avenues of redress to the extent he could timely do so—which is improbable—or if conduct of the sort alleged in this case recurs.

Knox also filed a motion for appointment of counsel. His first such motion, filed in February 2012, was denied by the previous judge assigned to this case. *See* Dkt. # 22. He filed another on January 23, 2013, after he already had filed his fourth Amended Complaint *pro se*, with help from the court's *Pro Se* Assistance Office. The motion would be mooted by the dismissal of the case, but the Court addresses it by way of explaining not only why Knox is not entitled to counsel, but why this dismissal will be with prejudice.

When evaluating a request for pro bono counsel, the Court must ask two questions: "has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (*en banc*). As for the first question, Knox lists three private attorneys he contacted and states that he was unable to procure counsel because he cannot "pay the retainer fee." That is undoubtedly true, as Knox contacted large corporate firms not known for bringing § 1983 litigation on behalf of individuals and whose rates are outside the budgets of most individual litigants. And in the year that passed between his two motions, Knox apparently contacted only one additional attorney. Knox says nothing about whether he spoke to any attorneys who use contingency-fee arrangements, although it would have been more reasonable for him to have targeted that segment of the bar. But even if his efforts were adequate, Knox has not shown himself incompetent to prosecute his

simple case at the pleading stage. His lack of success thus far has to with the nature of his allegations, not his ability to present them. He has cited case law appropriately and has made the factual basis of his claims clear. Although he would likely need assistance if the case were to proceed beyond the pleading stage, Knox has shown that, facts permitting, he would be capable of filing a complaint that passes muster.

In any case, appointing counsel would be futile. The Court has now seen four iterations of Knox's factual allegations. They have never contained any description of a Fourth Amendment seizure or any "official" harassment by Office Luke. Although an attorney could present the allegations in a clearer format, she could not spin them into a federal constitutional claim. Further, the Court's prior dismissal provided a road map for Knox as to the deficiencies in his factual allegations; if he could allege additional facts to fill those gaps, he surely would have. For the same reasons, further amendment of the complaint would be futile as well. Therefore, the dismissal of the fourth Amended Complaint is with prejudice.

Date: September 10, 2013

John J. Tharp, Jr.
United States District Judge